

# *VIRGINIA:*

## IN THE CIRCUIT COURT FOR FREDERICK COUNTY

| | |
|---|---|
| SOURCETECH, LLC, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: CL20- **0277** |
| | ) |
| DEATSCHWERKS, LLC, | ) |
| | ) |
|     Defendant. | ) |

Serve:  Clerk of the State Corporation Commission
         1300 East Main Street
         Tyler Building, 1st Floor
         Richmond, VA 23219

## **COMPLAINT**

Comes now SOURCETECH, LLC, by its counsel, and for its complaint against DeatschWerks, LLC states as follows:

### Parties

1. SOURCETECH, LLC is a limited liability company organized under the laws of the Commonwealth of Virginia and having its principal place of business at 205 Brick Kiln Road in Frederick County, VA. Among other things, SOURCETECH supplies custom designed, high-performance automotive and powersports components to the US market.

2. DeatschWerks, LLC is a limited liability company organized under the laws of the State of Oklahoma and has its principal place of business at 415 E. Hill Street in Oklahoma City, OK. Among other things, DeatschWerks sells high-performance fuel pumps and other fuel delivery components.

EXHIBIT 1

### Jurisdiction and Venue

3. DeatschWerks contracted with SOURCETECH, a Virginia company with its principal place of business in Frederick County. For over a decade, DeatschWerks has regularly and systematically ordered and SOURCETECH has supplied high-performance fuel pumps and other fuel system parts. Over the same period, DeatschWerks has requested and SOURCETECH has provided engineering design and product development and manufacturing services for DeatschWerks. DeatschWerks is not registered to transact business in the Commonwealth of Virginia; however, DeatschWerks regularly conducts and transacts substantial business activity in Virginia with SOURCETECH and, upon information and belief, with others. Accordingly, this court has personal jurisdiction over DeatschWerks.

4. This action arises from actions by DeatschWerks in violation of a contract with SOURCETECH, a Virginia company with its principal place of business and sole member in Frederick County. The contract was formed in Frederick County, governed by Virginia law, to be performed and was breached, in whole or in part, in Frederick County. Accordingly, a substantial part of the events and actions giving rise to the claim occurred within Frederick County.

### Facts

5. In December 2008, DeatschWerks entered into a Confidential, Non-circumvention, Non-Competition and Non-Solicitation Agreement ("the Agreement") with Global Safety Products, LLC. The Agreement is attached as Exhibit A and its terms are incorporated herein by reference. Global Safety Products, LLC changed its name to SOURCETECH, LLC effective October 7, 2015. The Agreement remains in full force and effect.

6. In the Agreement, DeatschWerks agreed that it would not pursue or conduct any business whatsoever, directly or through an intermediary, with any manufacturers, suppliers or other entities introduced to DeatschWerks by SOURCETECH or developed by SOURCETECH in concert with DeatschWerks or independently. SOURCETECH and DeatschWerks also agreed that any violation of the Agreement, including the prohibitions on competition, circumvention and solicitation, would cause irreparable harm to the non-breaching party and therefore that the non-breaching party would be entitled to enjoin the offending conduct in addition to seeking damages.

7. DeatschWerks and SOURCETECH agreed on a list of companies with whom DeatschWerks was already working and were exceptions to the Agreement's prohibition on DeatschWerks conducting business with SOURCETECH's manufacturers and suppliers.

8. Shortly thereafter, DeatschWerks began placing orders with SOURCETECH for fuel pumps and other related high-performance fuel system components. As part of the collaboration, SOURCETECH provided, usually at its sole and substantial cost, all necessary engineering design, prototyping and product development services to produce fuel system components and substantially expand DeatschWerks' product line based on market research.

9. SOURCETECH developed relationships with manufacturers in China and Taiwan to manufacture the high-performance automobile fuel system and other components requested by DeatschWerks.

10. Beginning in 2008 and since, SOURCETECH, at the request of and in collaboration with DeatschWerks and at its sole or substantial cost, developed engineering specifications and designs for the high-performance fuel system components for DeatschWerks.

3

11. Beginning in 2008 and since, SOURCETECH, at its sole or substantial cost, engaged its international manufacturing partners to acquire or fabricate the necessary production tooling (molds, dies, assembly tools, etc.) needed to produce prototypes and manufacture high-performance fuel system components for DeatschWerks.

12. In or about September 2015, SOURCETECH shared with DeatschWerks that SOURCETECH had partnered with Joinhands Auto Spare Co, LTD, often referred to as "JH", to manufacture fuel pumps to DeatschWerks' performance requirements. Since then, principals at SOURCETECH and DeatschWerks have regularly discussed Joinhands' capability, capacity, quality control, production schedules, manufacturing processes and other matters related to its ability to produce fuel pumps which would satisfy DeatschWerks' performance requirements.

13. In or about June 2016, SOURCETECH shared with DeatschWerks that SOURCETECH had partnered with Golden Bloom LTD, often referred to as "GB", to manufacture fuel system components to DeatschWerks' specifications. Since then, principals at SOURCETECH and DeatschWerks regularly discussed Golden Bloom's capability, capacity, quality control, production schedules, manufacturing processes and other matters related to its ability to produce fuel system parts which would satisfy DeatschWerks' performance requirements.

14. As a result of SOURCETECH's investment, development and significant work incurred in order to fill DeatschWerks' orders and to perform its contract, DeatschWerks was made aware of SOURCETECH's business relationships with Joinhands ("JH") and Golden Bloom ("GB"), and of SOURCETECH's use of these partners to manufacture and supply products ordered by DeatschWerks. DeatschWerks also gained information and knowledge that

4

SOURCETECH had paid for all or substantially all of the engineering design, tooling and prototyping necessary for these manufacturers to produce the products DeatschWerks desired.

15. By virtue of these same facts, DeatschWerks became privy to SOURCETECH's engineering designs, processes, means and methods, and other confidential and proprietary business information related to design, development, prototyping and production of fuel pumps and fuel system components.

16. For more than a decade, DeatschWerks benefitted from SOURCETECH's substantial investment of money, expertise and time to design, develop, prototype and produce the fuel pumps and other fuel system products desired by DeatschWerks.

17. For more than a decade, DeatschWerks benefitted from SOURCETECH's substantial investment of money, expertise and time spent traveling to China and Taiwan to meet with manufacturers, test prototypes, inspect production orders, audit factories, negotiate pricing and production schedules, hire and train local staff and conduct other business activities necessary to produce and supply fuel pumps and other fuel system products desired by DeatschWerks.

18. From 2015 to 2018, DeatschWerks placed 91 purchase orders for fuel pumps and fuel system components with SOURCETECH, or an average of more than 18 orders per year. In 2017, SOURCETECH sales to DeatschWerks totaled over $825,000. In 2018, SOURCETECH sales to DeatschWerks totaled over $930,000. In 2019, DeatschWerks placed only five fuel pump orders with SOURCETECH, one of which was later cancelled, and placed no orders for any other fuel systems components. In 2019, SOURCETECH sales to DeatschWerks totaled just over $120,000, or a 675% revenue decrease and similar loss in profits. To date in 2020, DeatschWerks has placed no orders with SOURCETECH.

5

19. In early February 2019, DeatschWerks owner David Deatsch told SOURCETECH owner Drew Patterson that DeatschWerks expected to place at least seven orders by the end of August. When asked during the 3rd quarter of 2019 about the lack of orders for fuel pump and delivery accessories, Mr. Deatsch stated that his supply chain manager had ordered excess inventory but that he expected to resume placing orders as per usual as inventory was depleted. In truth, DeatschWerks was then and had for some time been ordering fuel pumps and fuel system components directly from Joinhands and Golden Bloom, circumventing SOURCETECH.

20. Upon information and belief, beginning in 2018 and continuing as recently as March 2020, DeatschWerks has ordered fuel pumps and other high-performance fuel system parts directly from Joinhands and Golden Bloom. At the time of these orders, DeatschWerks knew that it was conducting business in violation of the Agreement with manufacturers and/or suppliers to whom DeatschWerks had been introduced by SOURCETECH and who had been developed by SOURCETECH to produce products for DeatschWerks.

21. At no time did DeatschWerks solicit or obtain SOURCETECH's written consent to conduct business directly with SOURCETECH's overseas manufacturing partners. Rather, DeatschWerks actively concealed from SOURCETECH that it was ordering products directly from at least two such partners, Joinhands and Golden Bloom.

22. By trading directly with SOURCETECH's overseas manufacturing partners in violation of the Agreement, DeatschWerks has committed and continues to commit a material breach of the Agreement by which SOURCETECH has been damaged and will continue to be damaged by lost sales and otherwise.

6

23. If permitted to continue trading directly with SOURCETECH's overseas manufacturing partners in violation of the Agreement, DeatschWerks will continue to deprive SOURCETECH of its profit on future sales and otherwise cause irreparable harm to SOURCETECH.

### Count I – Breach of Contract

24. The facts alleged in paragraphs 1-23 above are incorporated herein by reference.

25. The Agreement prohibits DeatschWerks from ordering fuel pumps and other fuel system components products directly from SOURCETECH's overseas manufacturing partners.

26. By virtue of the actions of DeatschWerks described herein, DeatschWerks has committed a material breach of contract, and SOURCETECH has sustained monetary and other damages as a direct and proximate result thereof.

27. SOURCETECH has already suffered damages as a proximate cause of DeatschWerks' breach of the Agreement and will continue to suffer damages in the future if and when DeatschWerks continues to order products directly from SOURCETECH's overseas manufacturing partners. Accordingly, SOURCETECH demands judgment for $2 million or as shown by the evidence adduced at trial.

### Count II – Violation of Va. Code § 59.1-336, et seq.

28. The allegations set forth in paragraphs 1 - 27 are hereby incorporated by reference as if set forth in full herein.

29. The information described above concerning SOURCETECH's proprietary designs and specifications, manufacturers and suppliers, including their identity, location, capacity, pricing and other information concerning the design and production of goods and materials as directed by SOURTECTECH for ultimate sale to DeatschWerks derives

7

independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and has been the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

30. DeatschWerks' actions as set forth herein, and as will be proven further at trial, constitutes a misappropriation of trade secret information as prohibited by Va. Code § 59.1-336.

31. As a result of the wrongful acts set forth herein, SOURCETECH is entitled to injunctive relief and to damages as provided by Va. Code § 59.1-337 and -338, as well as attorney's fees pursuant to § 59.1-338.1.

## Count III – Injunction

32. The allegations set forth in paragraphs 1 - 31 are hereby incorporated by reference as if set forth in full herein.

33. DeatschWerks alone determines when, from whom, and in what quantities it will purchase products.

33. DeatschWerks can develop all manner of new and independent sources for its fuel pumps and fuel system components anywhere in the world, just not by capitalizing on or exploiting the manufacturing entities developed by SOURCETECH or using SOURCETECH's proprietary engineering design or other confidential information after it has been made known to DeatschWerks, in breach of the parties' agreement and in breach of Virginia's Trade Secret Statute.

34. Over the course of its relationship with SOURCETECH, DeatschWerks has gained substantial knowledge of and benefited from SOURCETECH's confidential and proprietary information, designs, specifications, business practices, product development

8

practices, and manufacturing sources and methods.

35. The Agreement is narrowly drawn to protect, for a reasonable time, SOURCETECH's legitimate business interests, confidential and proprietary engineering design and other information, and longstanding business relationships SOURCETECH has invested substantial time and money to develop.

36. As a result of DeatschWerks' ongoing purchase of fuel pumps and fuel system components from SOURCETECH's overseas manufacturing partners, DeatschWerks is exploiting and wrongfully benefitting from the time, effort and cost to develop its own new relationships and is instead trading on SOURCETECH's existing expertise, relationships and confidential information.

37. As a result of DeatschWerks' ongoing and possible future purchase of fuel pumps and fuel system components from SOURCETECH's overseas manufacturing partners at times and in quantities SOURCETECH cannot reasonably predict, SOURCETECH is suffering and will continue to suffer irreparable injury without an adequate remedy at law and, unless enjoined by this Court, DeatschWerks will continue to cause irreparable injury and damage to SOURCETECH as a result of DeatschWerks' actions in violation of the Agreement.

38. DeatschWerks specifically acknowledged that violation of the Agreement, including the prohibitions on competition, circumvention and solicitation, would cause irreparable harm to SOURCETECH and that SOURCETECH would be entitled to enjoin the offending conduct in addition to seeking damages.

39. Fundamental principles of equity dictate that DeatschWerks be enjoined from purchasing fuel pumps and fuel system components from SOURCETECH's overseas manufacturing partners until the five-year non-competition and non-circumvention period set

9

forth in the Agreement has expired.

## Relief Requested

Wherefore, for the foregoing reasons, SOURCETECH demands entry of an order giving SOURCETECH the following relief in such combination as will make SOURCETECH whole:

i. Awarding judgment against DeatschWerks in the amount of $2 million, or in such other amount as may be shown by the evidence, as compensation for profit on lost sales and other damages SOURCETECH has incurred and, to the extent provable by competent evidence, will incur in the future; and/or

ii. Enjoining DeatschWerks, its shareholders, directors, members, officers, employees, affiliates, advisors, agents, representatives, partners, associates, successors and assigns from ordering products or parts or conducting business with Joinhands, Golden Bloom or any other SOURCETECH manufacturing partner from the date of the judgment for a period of five years as provided in the Agreement; and

iii. Awarding SOURCETECH its attorneys' fees and costs incurred in this action as provided in paragraph 8 of the Agreement;

iv. Damages including actual losses, unjust enrichment, punitive damages, and attorneys' fees, as provided by Va. Code § 59.1-338 and -338.1

v. Granting such other relief as may be warranted by the evidence adduced at trial.

SOURCETECH, LLC

By: _____
Counsel

James C. Cosby, Esq. (VSB No. 25992)
James W. Walker, Esq. (VSB No. 29257)
Katherine M. Rockwell, Esq. (VSB No. 93733)

O'HAGAN MEYER, PLLC
411 East Franklin Street, 5th Floor
Richmond, VA 23219
Tel:    804.403.7100
Fax:    804.403.7110
Email: jcosby@ohaganmeyer.com
         jwalker@ohaganmeyer.com
         krockwell@ohaganmeyer.com
*Counsel for SOURCETECH, LLC*

*[handwritten top: "Nam change — Virginia"]*   12/4/2008

# CONFIDENTIAL, NON-CIRCUMVENTION, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

bal Safety Products, LLC, also known as GSP International, and hereby referred to as GSP, located at 603 West Broad Street, Suite #2, Falls Church, Virginia, and __Deatsch Werks__, located at __3601 Equestrian Ct Edmond, OK__ anticipate that they will exchange certain confidential Information relating to their respective businesses in discussions or negotiations in pursuit of, or during the course of, a business relationship between them. The parties are therefore entering into this Agreement in order to assure the confidentiality of such Information, their non-circumvention of one another in accordance with the terms of this Agreement, and other matters.

1. **Confidential Information.** For purposes of this Agreement, the term "Confidential Information" shall mean all information disclosed orally or in writing, whether prior to or after the date hereof, by the parties to each other related to their respective businesses, including without limitation information about their respective finances, business plans and strategies, operations, business contacts, marketing and development strategies, customers and competitors, suppliers and manufacturers, and similar information about their respective affiliated entities, whether or not marked or identified as confidential. The term "Confidential Information" does not include any information that, at the time of disclosure or thereafter (a) was generally available to or known by the public (other than as a result of acts in breach of this Agreement), (b) was received by the recipient party from a third party which was not bound by any obligation of confidentiality with respect to the information, (c) was independently acquired or developed by the recipient party without the use of any information provided by the other party hereunder, as demonstrated by the records of the recipient party; or (d) is required to be disclosed by a subpoena or order issued by a court of competent jurisdiction or by a governmental agency.

2. **Use of Confidential Information.** Each party shall keep and hold confidential, and shall require its respective shareholders, directors, officers, employees, affiliates, partners, associates, advisors, agents and representatives to keep and hold confidential, any and all Confidential Information received from the other party. Neither party shall disclose any Confidential Information to third parties nor to employees or representatives who do shall not have a need to know it, and neither party use or permit use of any Confidential Information except for the purposes of pursuing or carrying out transactions with the other party.

3. **Return of Confidential Information.** Each party shall promptly deliver or cause to be delivered to the other, after termination for any reason of the business relationship between them, or at any time upon the written request of the other party, any documents containing Confidential Information which have previously been delivered to it and any copies thereof.

*[handwritten: "new had worked w/a prior contract manufacturer developed in conjunction with Douglas McCauley - local atty"]*

7/1/08                                                                                                      Page 1

**EXHIBIT A**

## CONFIDENTIAL, NON-CIRCUMVENTION, NON-COMPENTITION AND NON-SOLICITATION AGREEMENT

Non-Disclosure. Without the prior written consent of the other party, neither a party nor its representatives will disclose to any person any of the terms, conditions or other facts with respect to any transaction with the other party, unless otherwise required by law or government agency.

5. Non-Circumvention, Non-Competition, and Non-Solicitation. _Deutsch Werks_ agrees that, except with the participation of GSP on terms satisfactory to GSP, it will not pursue or conduct any business whatsoever, directly or through any intermediary, with any manufacturers, suppliers or other entities in China introduced to it by GSP, or developed by GSP in concert with _Deutschwerks_ or independently. Neither party will solicit, hire, retain, or engage any of the other party's employees or former employees without the prior written consent of the other party.

6. Binding Agreement; Successors and Assigns; Survival. This Agreement, including but not limited to the non-circumvention, non-competition, and non-solicitation provisions of paragraph 5, shall be binding on the parties and their respective shareholders, directors, officers, employees, affiliates, advisors, agents, representatives, partners, associates, affiliates, successors and assigns. This Agreement shall inure to the benefit of the respective parties and their successors and assigns. This Agreement, including but not limited to the non-circumvention, non-competition, and non-solicitation provisions of paragraph 5, shall survive for a period of five (5) years following the termination of the business relationship between the parties.

7. No License. The parties acknowledge and agree that they are, and shall each remain, the exclusive owners of their respective Confidential Information and of all intellectual property rights therein. No license or conveyance of such rights by either party to the other is granted or implied under this Agreement

8. General Terms. If any provision of this Agreement is declared void or unenforceable, such provision shall be severed from this Agreement, which shall otherwise remain in full force and effect. If either party waives a breach of this Agreement by the other party, such waiver shall not operate as or be construed as a waiver of subsequent breaches whether similar, identical or unrelated. In the event any suit or other action is commenced to enforce any provision of this Agreement, the prevailing party shall be entitled to reasonable reimbursement for attorney's fees and costs. Each party recognizes that any actual or threatened disclosure of Confidential Information or any circumvention, competition or solicitation in violation of this Agreement may cause irreparable injury and that the other party therefore shall be entitled to injunctive relief, a decree of specific performance or other equitable relief, without bond or similar arrangement, upon a proper showing of such a violation, without the necessity

## CONFIDENTIAL, NON-CIRCUMVENTION, NON-COMPENTITION AND NON-SOLICITATION AGREEMENT

of demonstrating actual monetary damage; provided, however, that it is understood and agreed that the seeking or obtaining of any such relief shall not prevent the seeking or obtaining of any other relief, including the remedy of damages. This Agreement may not be modified except in writing signed by both parties hereto. This Agreement shall be governed by the laws of the State of Virginia, without regard to its conflict of laws rules.

IN WITNESS WHEREOF, the parties hereby have caused this Confidentiality, Non-Circumvention, Non-Competition, and Non-Solicitation Agreement to be executed as of the day and year above written.

| Global Safety Products, LLC, (DBA GSP International) for itself and its shareholders, directors, officers, employees, affiliates, partners, associates, agents, representatives, advisors, successors and assigns<br><br>By: _[signature]_<br>Andrew W. Patterson, President<br><br>Date: 12/4/08 | Deatsch Werks, for itself and its shareholders, directors, officers, employees, affiliates, partners, associates, agents, representatives, advisors, successors and assigns.<br><br>By: _[signature]_<br>Authorized Officer<br><br>Name: David Deatsch<br>Title: President<br>Date: 12/1/08 |
|---|---|

Amendment – see attached email for listing of companys in China DeatschWerks is currently working with.

Monday, December 1, 2008 10:11 AM

**Subject: Re: Injector Manufacturing**
   te: Wednesday, November 26, 2008 3:55 PM
   ᴊm: David Deatsch <david@deatschwerks.com>
To: Drew Patterson <dpatterson@gspresults.com>

Drew,

I received a message from you following up on the PowerPoint. I did not get the powerpoint email. Can you please resend it. It may be getting blocked so please try my other email... ddeatsch@gmail.com

The companies I have worked with in China are listed below. I would like them listed as exception on our NDA as we move forward...

Jinjiang Junri Machinery Co., Ltd.
Quanzhou, Fujian

Ningbo Tocean Auto & Industrial Parts Co., Ltd.
Ningbo, Shaoxing, Wenzhou

Yueqing Brifar Electrical Co., Ltd.
HONGQIAO TOWN, YUEQING CITY, ZHEJIANG, CHINA

GZ-CB/Well Express
Mongkok, Kowloon, Hong Kong

There are several other companies I have "found" on Alibaba but the above companies are the only ones I have worked with.

Best regards,

**David Deatsch**
**DeatschWerks**
**405-415-6862**